CARMEN ANA MARTÍNEZ, ETC., Plaintiff and Appellee, *v.* ELÍAS GONZÁLEZ, Defendant, and ANDRÉU AGUILAR & Co., INC., Defendant and Appellant.

No. 8038. Argued June 20, 1940.—Decided July 5, 1940.

*Géigel & Silva* (*C. Andréu Ribas* on the brief) for appellant. *Edelmiro Martínez Rivera* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

This appeal has been taken by the defendant corporation Andréu, Aguilar & Co., Inc., from a judgment directing it and its codefendant Elías González Amador, jointly and severally to pay to the plaintiff Carmen Ana Martínez, the sum of $1,500, with costs including $200 as attorney's fees.

According to the allegations of the complaint, between 8:30 and 9:00 o'clock in the morning of October 14, 1937, Elías González Amador, then an employee of the concern Andréu, Aguilar & Co., Inc., by reason of his unskillfulness and negligence drove an automobile which he was operating at the time and which belonged to Andréu, Aguilar & Co., Inc., against house No. 5 on Nueva Street, of the ward of Marina, of this city of San Juan, the vehicle penetrating into the parlor of the house where it struck the plaintiff minor causing her ". . . besides some wounds in the head and several serious wounds and contusions in various parts of her body, the fracture of both bones of her left leg."

As a specific act of negligence charged against Andréu, Aguilar & Co., Inc., which is the only appellant in this case, it was alleged that ". . . it failed to exercise the due diligence and care required of a father of a family to maintain the vehicle in question under adequate and reasonable control so as to avoid its use for causing injury to the person or property of another, having on the contrary permitted and allowed said automobile to be operated, as it was actually operated, by the codefendant Elías González, a person who is not authorized to operate motor vehicles on the public highways of the Island."

The defendant company in its answer admitted the occurrence of the accident; the unskillfulness and negligence of

the codefendant Elías González Amador; his civil liability to the plaintiff; the ownership of the vehicle which caused the damage, and lastly, ". . . . that as a result of the bruises and lesions received by the plaintiff in said accident, she has suffered and still suffers intense physical pain," which formerly did not afflict her. The issues having thus been limited, the case went to trial with the result which we have already stated.

The appellant in its brief assigns nine errors that we will not discuss separately, first, because there is unnecessary repetition in them; and, second, because most of them have been submitted by the appellant without arguing them separately. We will therefore divide them into three groups, treating in the first of the liability of the appellant for the fault or negligence of its codefendant; in the second, of everything pertaining to the weighing of the evidence; and in the third, of the amount of indemnity granted.

■ As was said in the case of *Burgos* v. *Sobrinos de Villamil,* 41 P.R.R. 85, which the appellant cites in support of the assignments comprised in the first group, the fundamental question for the purposes of the judgment under review is whether or not it was proved that among the duties of the employment of Elías González Amador was the driving of the automobile, and that the defendant had expressly prohibited that its automobiles should be operated by the apprentice mechanics. Teodoro Aguilar Mora, Treasurer of the defendant corporation, testified that Elías González Amador worked in its establishment as an apprentice mechanic. The record is absolutely silent on the question of whether or not González had been prohibited by Teodoro Aguilar Mora or by any other executive of the concern duly authorized therefor, from driving defendant's automobiles. In this respect, the present case is distinct from that of Villamil, *supra,* where ". . . the evidence for the latter showed beyond a reasonable doubt that Pablo Martínez was not authorized to drive the defendant's truck and that the

defendant employed the chauffeur Manuel Villar Alonso
expressly for that purpose, there being no showing that on
other occasions the helper had driven the truck. On the
contrary, as testified by the chauffeur, the latter did not allow
the helper to drive the vehicle because he was not licensed
therefor, and because the manager of the defendant's estab-
lishment had expressly prohibited that the truck should be
operated by any other person than the said chauffeur.'' And
if in that case Sobrinos de Villamil took the precaution to
give to the laborer Pablo Martínez said orders, notwithstand-
ing the dissimilarity between the employment of a chauffeur
and that of a laborer, the defendant herein was all the more
bound to take such a precaution in view of the character of
the employment held by González, in which, despite the state-
ments of the defendant, is implied the driving of vehicles, in
the absence of instructions to the contrary. In failing to
do so, the appellant was negligent and is therefore responsible
for an accident which was the natural and probable conse-
quence of its failure to act.

Was there any error in the weighing of the evidence,
or did the lower court act under the influence of passion,
prejudice, or partiality? It is true that the judge questioned
the defendant's witnesses somewhat more extensively than
is ordinarily necessary in cases like the present; but its
action was far from being the result of passion, prejudice, or
partiality. On the contrary, it may be asserted that it was
inspired in the desire to better understand the facts, enabling
him to reach a fair conclusion. For example, the codefend-
ant Elías González Amador insisted so much in showing that
he was ignorant of everything pertaining to an automobile
that his testimony strikes one ·as being strange. In his
alleged ignorance he went to the extreme of denying having
any acquaintance with certain automobile parts with which
even a peasant who has lived all his life in the remotest
sections of our Island is familiar. In these circumstances,
it is not to be wondered at that a judge should endeavor to

ascertain by means of questions whether a witness is lying or telling the truth when he states that he does not know the hood of an automobile while being able to explain in detail the procedure whereby an automobile is started.

As showing that there was passion, prejudice, and partiality, there was also quoted the following colloquy between the court and Teodoro Aguilar Mora:

"A. I have given absolutely no order to him; I am the one who watches things there because the other is always out on the street; I am the man who stands on watch.

"Q. Are you the one who stays there the most?

"A. Yes, I handle everything because Pepe Andréu is selling in the upper floor.

"Q. What place is occupied by Pepe Andréu?

"A. The principal office, in the automobiles, the chief of sales, the nerve of the establishment. I handle details, these small things.

"The Court: What small things?

"A. Of the management.

"The Court: But do you call this a small matter?

"A. No, not this matter. I have nothing to do with this matter. If this boy takes the automobile and kills the Governor of Puerto Rico, what would I have to do with that?

"Mr. Martínez Rivera: I move to strike that out.

"The Court: You do not want the Governor to be killed?

In this incident there was nothing more than a misunderstanding between the judge and the witness.

■ Regarding the amount of the award and the imposition of costs which include $200 as attorney's fees, it must be held that the same is not excessive, in view of the aggravating circumstances which surround this case. The plaintiff is a girl, six years of age, who on the day of the accident, according to the evidence, was taking breakfast in the parlor of her house. Not only was she in a place where she had a right to be and where González was a trespasser, but also in a place where she was entitled to expect the greatest security: in her own home. The physician who treated her testified that the fibula and tibia of her left leg had been

broken; that complete fractures were involved; that she was confined in the Presbyterian Hospital under treatment from October 14, 1937, to November 4 of the same year; that when he examined her a little before the trial he found a small deformity which would take from four to five years to disappear; that when the girl was taken to the hospital she was unconscious, due to the blows she had received on the head; that he placed her leg in a plaster cast, and that this treatment produces discomfort; that the fractures and bruises suffered by the girl cause intense pain, physical discomfort, and require special care.

Rafael Martínez Serrano, father of the girl, testified that his daughter lost weight after the accident and also lost her appetite; that on damp days (*"barrunto"*), that is, on rainy days, he has to rub her with medicines which the physicians have prescribed; that Dr. Abel de Juan was still treating his daughter; that when she does not feel any pain, she sleeps well, but on rainy days neither she nor he sleep.

In these circumstances, we must hold that the award granted is just and reasonable.

The judgment appealed from must be affirmed in all its parts.